IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                          Case Nos.:    3:11cr56/LAC/EMT
                                                           3:13cv137/LAC/EMT


TODD F. BRITTON-HARR

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 139). The Government filed a response (ECF No. 142), and Defendant filed a reply (ECF No. 144). Defendant raised two additional issues in his reply, and the Government filed an additional response, titled "Motion to Strike or, in the Alternative, Response to the Defendant's New Assertions Pursuant Title 28, United States Code, Section 2255" (ECF No. 146), to which Defendant filed a reply (ECF No. 147). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## PROCEDURAL BACKGROUND

Defendant Todd Britton-Harr and Co-defendant Karyn J. Britton[1] were charged in a two-count indictment with execution of a fraudulent scheme ("Count One") and making a false statement for the purpose of influencing a federal financial institution ("Count Two") (ECF No. 3). Defendant Britton-Harr, acting as a real estate agent and power of attorney for Ms. Britton, along with Ms. Britton, were alleged to have knowingly made false statements on Ms. Britton's loan application to acquire real estate located at 13555 Perdido Key Drive, Unit A19U, Pensacola, Florida ("henceforth "Unit A19U") in the Purple Parrot Condominiums. The false statements related to Ms. Britton's other financial liabilities, her expression of intent to occupy the property as a primary residence, and the relationship of the parties involved. Defendant Britton-Harr was similarly involved in three real estate purchases Ms. Britton made at the Purple Parrot Condominiums, and thus he had knowledge of Ms. Britton's liabilities and intent with respect to her primary residence (*see generally* ECF Nos. 95, 125, 132, 133).

As set forth in the Final Presentence Investigation Report (ECF No. 95), in September of 2009, a representative from Wells Fargo Bank contacted the FBI regarding a mortgage loan fraud which exposed Wells Fargo to a potential loss in excess of $308,000.00. The purportedly fraudulent mortgage loan was obtained by Karyn Britton for Unit A19U in the Purple Parrot Condominiums. Ms. Britton had also obtained other loans around the same time period and she purchased three units at the Purple Parrot with the assistance of her step-son, Defendant Britton-Harr, without disclosing her prior liabilities. Through commissions and the issuance of "repair" funds, Britton-Harr and Ms. Britton received in excess of $150,000 from the purchase of Purple Parrot Units B10, C46U, and A19U between July 31 and August 14, 2006. All three mortgages went into foreclosure, with a total foreclosure loss of $1,156,236.69 (ECF No. 95 ¶ 8).

The loan application for Unit A19U identified three properties owned by Ms. Britton: two units at Purple Parrot, identified only as Units A and B[2]; and her residence in Bradenton, Florida (ECF No. 95, ¶ 10). In the declaration on the loan application, Ms. Britton indicated that Unit A19U

---

[1] Ms. Britton is married to Stephen F. Britton, Defendant Britton-Harr's adoptive father.

[2] The PSR does not reflect the specific Unit numbers.

would be occupied as a primary residence. Defendant Britton-Harr signed the loan application for Ms. Britton. A separate form 1099 signed by Britton-Harr for Ms. Britton also certified that the loan proceeds were for a principal residence, and an additional letter from Ms. Britton was personally submitted to the lender indicating that the property would be her primary address (ECF No. 95, ¶ 11).

Ms. Britton and her husband Stephen F. Britton granted a Power of Attorney to Defendant Britton-Harr for all transactions involving Unit A19U, and Britton-Harr also acted as the real estate agent in the transaction.

An independent post-underwriting review conducted by the mortgage insurance company, Radian Guaranty, Inc. ("Radian"), identified misrepresentations made by the borrower and issues with the loan. First, Ms. Britton did not disclose on her loan application that she had obtained two mortgage debts before submitting the loan application to Wells Fargo, when in fact she had obtained a mortgage in the amount of $420,000 on July 31, 2006, for Unit B10, and a mortgage in the amount of $261,000 on August 3, 2006, for Unit C46U (ECF No. 95, PSR ¶ 13). Radian also identified several other issues with the loan, such as: (1) the subject property was listed for sale at $249,000, but the final purchase price was $325,000, with the $76,000 difference covering "repairs and the seller contributions"; (2) suspected occupancy misrepresentation; and (3) a non-arms-length transaction by Defendant Britton-Harr (ECF No. 95, PSR ¶ 14).

A final judgment of foreclosure in the amount of $328,390.29 was entered in the First Judicial Circuit in Escambia County Florida in April of 2008 (ECF No. 95, PSR ¶ 15).

The PSR also provides detail about the prior purchases of units B10 and C46U (ECF No. 95, PSR ¶¶ 16–26), and repair money that was provided to Ms. Britton's LLC, "Five O'Clock Somewhere," for Units B10 and A19U (PSR ¶¶ 27–32). Acting as both power of attorney and real estate agent for Ms. Britton, Defendant Britton-Harr received a total of $56,050 from the sale of Units B10, C46U, and A19U, and Ms. Britton's company Five O'Clock Somewhere, LLC, received a total of $114,650.00 over a two-week period (ECF No. 95, PSR ¶ 36).

Ms. Britton entered a plea of guilty pursuant to a written plea agreement and cooperated with the Government. Defendant Britton-Harr, represented by Spiro Kypreos, elected a jury trial. The evidence at trial included testimony from individuals with knowledge of the real estate transactions,

including Ms. Britton, as well as documentary exhibits (*see* ECF Nos. 132, 133; ECF No. 95, PSR ¶¶ 129–135).  The jury acquitted Defendant of Count One and returned a verdict of guilty with respect to Count Two (ECF No. 66).  Defendant's representation was assumed by retained counsel David Deitch following trial (*see* ECF No. 83).

The Final Presentence Investigation Report ("PSR") reflects a total offense level of 25.  Defendant's base offense level of 7 was enhanced 14 levels due to the loss quantity, two levels due to his leadership role in the offense, and two levels due to his false testimony at trial (ECF No. 95, PSR ¶¶ 141–148).  Defendant's criminal history category was I, and the applicable guidelines range was 57 to 71 months of imprisonment (ECF No. 95, PSR ¶¶ 153, 154, 195).  Defendant objected to the description of the offense contained within the PSR, the attribution of any loss to Defendant, the adjustments for leadership role and obstruction, and the probation officer's failure to identify his military service as a factor that would warrant departure (ECF No. 95, PSR ¶¶ 215–230).

Defendant's sentencing was handled by Mr. Deitch, whose performance is not at issue in the instant motion.  At sentencing, the court overruled all of the defense objections and imposed a below-guidelines sentence of 48-months imprisonment  (*see* ECF No. 125 at 27, 28, 30, 37,  67–68).

Defendant promptly filed a notice of appeal (ECF No. 106).  Retained counsel moved for leave to withdraw, and the court then appointed appellate counsel for Defendant (ECF Nos. 114–116, 118, 119).  Defendant filed a motion to voluntarily dismiss his appeal, which was granted on December 20, 2012 (ECF No. 135).  Correspondence from appointed counsel Chet Kaufman to Defendant indicates that Defendant decided to dismiss the appeal after counsel reviewed the file and determined that there were "only sentencing issues worthy of appeal" (ECF No. 144 at 47).  Along with his letter to Defendant, Mr. Kaufman provided Defendant with a § 2255 form, and he warned Defendant of the deadlines for filing such a motion, as well as the fact that Defendant would be procedurally barred from raising any issues that could have been raised on appeal (ECF No. 144 at 48).

Defendant filed his initial § 2255 motion in March of 2013.  He filed an amended motion, pursuant to court order, in April of 2013 and raised seven grounds for relief (ECF Nos. 137, 139).  Defendant also filed a "Motion to Take Judicial Notice under Federal Rule 201 in Defendant's 28 U.S.C. § 2255 Proceeding" (ECF No. 141).  The court cannot "take judicial notice" of the assertions

contained therein, some of which directly relate to Defendant's guilt of the charges against him, others of which relate to procedural matters irrelevant to the disposition of the § 2255 motion; thus, the motion regarding judicial notice will be denied.  As noted *supra*, the Government filed a response to Defendant's § 2255 motion, and Defendant filed a reply, following which the Government filed an additional response in opposition to "new" claims raised in Defendant's reply, and Defendant filed an additional reply (ECF Nos. 142, 144, 146, 147).  In June of 2015, after all of the above-mentioned documents had been filed, attorney Christopher Crawford filed a notice of appearance on Defendant's behalf (ECF No. 153), but counsel has filed no additional submissions.

Lastly, in June of 2013, after filing the instant motion, Defendant pleaded guilty to possession with intent to distribute 465.96 kilograms of marijuana in the Southern District of Texas, and in August of 2013 he was sentenced to a total term of 70-months imprisonment (S.D. Tex. Case No. 2:10-cr-01164, ECF No. 100).  The judgment reflects that 22 months are to run consecutive, and 48 months are to run concurrent, to his sentence in the instant case (S.D. Tex. Case 2:10-cr-01164, ECF No. 100).  The Texas conviction was affirmed on appeal, and—as of the date of this report—a § 2255 motion pending in that case (S.D. Tex. Case No. 2:10-cr-1164, ECF Nos. 131, 143).

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and

reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a

windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the

standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.  A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Finally, an evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.  *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *See* Winthrop–Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004).  Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing, Lynn, 365 F.3d at 1239, and disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One

Defendant claims that his appointed counsel, Spiro Kypreos, was constitutionally ineffective prior to and during trial in several respects.[3]  First, he maintains that counsel failed to subpoena phone records of Co-defendant Karyn Britton and her father.  According to Defendant, such records would have proven that Ms. Britton provided the application contained in her mortgage application from a residence in Bradenton, Florida, thus disproving the assertion that the information was supplied by Defendant in Pensacola as initially alleged.  Defendant asserts that the prosecuting

---

[3] To the extent Defendant has challenged counsel's trial preparation in this case, the undersigned notes that the district court found that Mr. Kypreos spent too much time preparing Defendant's case, both as it pertained to interviews and conferences with his client and obtaining and reviewing records (*see* ECF No. 142 at 34–35).

AUSA refused to subpoena the records and that Mr. Kypreos also failed to secure the records although the phone number was available to him (ECF No. 139 at 3).

The Government has presented Attorney Kypreos' affidavit in conjunction with its response (ECF No. 142 at 19–25). Counsel maintains therein that in an effort to obtain the records, he contacted Ms. Britton's attorney, James Jenkins. Mr. Jenkins looked into the matter and informed Mr. Kypreos that the records did not exist (ECF No. 142 at 19). In any event, as noted by the Government, the origin of the mortgage application was irrelevant to Defendant's conviction on Count Two.[4]

Defendant next contends that counsel was constitutionally ineffective for failing to contact Greg Grover, whom Defendant describes as an active real estate agent who had offered to assist counsel in preparing for trial.[5] Defendant asserts that Mr. Grover could have clarified the mortgage application process and would have been able to dispute Ms. Britton's assertion that Defendant procured the mortgage for Ms. Britton. Defendant also states that Mr. Grover would have explained that the "Alt-A Loan Program," used to obtain the loan in question in this case, involved approval of loans based solely on an applicant's credit score, and therefore no income or asset information had to be divulged to procure the loan. Consequently, Defendant asserts, Ms. Britton's loan had been approved based on the credit application she submitted before Defendant signed the HUD 1 Statement as Ms. Britton's Power of Attorney, and he did not engage in wrongdoing (ECF No. 139 at 6).

In response to Defendant's assertion, Defendant's trial counsel states that he had Defendant's assistance in preparing for trial, and as such he "did not need Mr. Grover's assistance" (ECF No. 142 at 20). Counsel notes that because Grover was "not an eyewitness to who sent the application," he could not have proven that it was Ms. Britton who submitted the application (*id*.). Counsel notes that in any event, the problem was not with the origin of the application form, but with Defendant's affixing his signature at closing attesting to the truthfulness of the information provided by Ms.

---

[4] The Government concedes that the telephone records, had they existed, could have been helpful with respect to Count One, but notes that Defendant's acquittal on Count One eliminates the question of prejudice.

[5] An affidavit of Steven Harr (who is married to Defendant's mother) identifies Mr. Grover as a "Private Investigator and Realtor" (ECF No. 144 at 90).

Britton. Counsel opines that Grover's information regarding the loan process would have been, in essence, superfluous because "the defense demonstrated at trial the ease with which loans could be obtained" (ECF No. 142 at 20).

Defendant claims that the omitted information regarding liabilities was not necessary because it was an Alt-A loan, and Grover would have explained as much. However, this information was already before the jury. As Defendant stated at sentencing, both he and Co-defendant Karyn Britton testified that the loan approval was based on Ms. Britton's credit scores (ECF No. 125 at 59). Ultimately, Defendant has not shown that the outcome of the proceedings would have been different had Grover testified, and thus Defendant has not established that counsel's performance was constitutionally deficient in this respect.

Defendant also faults counsel for failing to call Eric Flora, Noah Moseley, and Joel Smith as witnesses at trial. Each of these men had purchased Purple Parrot condominiums and, according to Defendant, would have testified that they did not get money back at closing like Ms. Britton did, and they would have refuted her testimony that she and her husband had talked to them about purchasing condominiums in the Purple Parrot through Defendant (ECF No. 139 at 6).

Counsel states in his affidavit that he contacted each of the proposed witnesses and learned that all of them, with the possible exception of Mr. Flora, would not have been helpful to his client's case. Counsel states that he discussed his "decision" (presumably not to call the witnesses) with Defendant, who agreed. At some point Defendant apparently changed his position and counsel subpoenaed Mr. Flora for trial "at movant's insistence" (ECF No. 142 at 20). In the meantime, Mr. Flora hired an attorney who told Mr. Kypreos that in his opinion Mr. Flora would hurt movant's case. After further conversation with Mr. Flora at the courthouse during the trial, counsel concurred. According to Mr. Kypreos, he informed his client that he would not call Mr. Flora, and why, and Defendant agreed (ECF No. 142 at 20–21).[6] In any event, Defendant has not shown that the claimed testimony would have affected Defendant's conviction on Count Two.

Defendant raises numerous other issues with counsel's representation, including errors allegedly made by counsel at trial, without specifically explaining how he was prejudiced thereby

---

[6] Counsel has not described the nature of the prejudicial information to which Flora would have testified.

(ECF No. 139 at 6–7). Defendant claims that counsel had "limited contact" with him before trial and that counsel had never handled a mortgage fraud case. He also claims that counsel had claimed to be "good friends" with Escambia County Lieutenant Frank Forte who had arrested Defendant three times for "noise violations," and indicates that this makes him "question the motive of Defense Counsel, for not following through with preparing adequately for trial" (ECF No. 139 at 7). As no prejudice has been shown as a result of these alleged deficiencies of trial counsel, Defendant is not entitled to relief.

Defendant next identifies five specific failings of counsel during trial (ECF No. 139 at 7–8). First, he faults counsel for failing to point out that a prosecution witness was new at her job at the time of the events in question. Next, counsel attempted to cross examine the same witness about an addendum to a Residential Loan Application before it was entered into evidence, showing, according to Defendant, counsel's "unfamiliarity with the evidence." Neither failing rises to the level of constitutional deficiency under Strickland. Defendant next faults counsel for twice failing to bring out information which would have shown reckless indifference by Wells Fargo and other parties to the mortgage process. To the extent Defendant attempts to suggest that the carelessness of others excuses his own actions, this is not a viable defense. Finally, Defendant asserts that counsel should have objected to the prosecution's use of an unsigned document as part of the Government's exhibits at trial, although again, Defendant fails to explain how he was prejudiced thereby (ECF No. 139 at 8). Defendant's suggestion that this is proof that counsel was overwhelmed by the sheer volume of paperwork is insufficient to establish that counsel's performance failed to meet the minimal constitutional requirements of Strickland as set forth above.

Ground Two

Defendant's second ground for relief assails Mr. Kypreos' post-trial performance. He contends that attorney Kypreos was constitutionally ineffective after trial in that he failed to contact Defendant during the time period for filing a motion for a new trial. In the same sentence Defendant indicates that upon leaving the courtroom he stated that he wanted to appeal the conviction, and Mr. Kypreos said that he would "get right on it" (ECF No. 139 at 3).

With respect to Defendant's suggestion that counsel was derelict in not filing a motion for a new trial, he cannot establish prejudice. The standard for a new trial based on the weight of the evidence is this:

> On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005) (quoting United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985)) (citations omitted). The standard is not easily met, as motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases." Hernandez, 433 F.3d at 1336–37 (quoting Martinez, 763 F.2d at 1313). Defendant's dissatisfaction alone is not a legal basis for such a motion, and he has not identified any reason that "justice would require" that the jury's verdict in this case be set aside. See Fed. R. Crim. P. 33(b).

Furthermore, the record reflects that Defendant's sentencing counsel timely filed a notice of appeal, which ultimately, Defendant chose to voluntarily dismiss (ECF Nos. 106, 135). As such, it cannot be said that trial counsel's actions interfered in any way with Defendant's appellate rights, and he is not entitled to relief.

Grounds Three, Six and Seven

In three of his grounds for relief, Defendant claims that he was subjected to "vexatious prosecution." To the extent that such a claim would even be viable on collateral review, Defendant's conviction precludes a claim that the prosecution was vexatious. See United States v. Shaygan, 652 F.3d 1297 (11th Cir. 2011); United States v. Gilbert, 198 F.3d 1293, 1299 (11th Cir. 1999); United States v. Kokesh, No. 3:13cr48/RV, 2014 WL 1133527 (N.D. Fla. Mar. 21, 2014).

Grounds Four and Five

Grounds Four and Five relate to allegedly perjured testimony presented at trial. A conviction which rests in part upon the knowing use of false testimony must be overturned if there

is any reasonable likelihood that the false testimony could have affected the judgment of the jury. United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). Defendant first claims that the Government "allowed" Karyn Britton to perjure herself in that she made statements during her testimony that contradicted statements she made during FBI interviews. Ms. Britton's testimony was subject to vigorous cross-examination, and to the extent Defendant suggests that the AUSA suborned perjury, he has provided no evidence or convincing argument of same. Moreover, the mere fact that a witness has previously given inconsistent statements is proof of neither perjury nor prosecutorial misconduct. United States v. McNair, 605 F.3d 1152, 1208–1209 (11th Cir. 2010) (citing United States v. Michael, 17 F.3d 1383, 1385 (11th Cir. 1994) ("We refuse to impute knowledge of falsity to the prosecutor where a key government witness'[s] testimony is in conflict with another's statement or testimony."); Hays v. Alabama, 85 F.3d 1492, 1499 (11th Cir. 1996) (determining there was no due process violation where "there has been no showing that [the witness's] later, rather than earlier, testimony was false"); United States v. Gibbs, 662 F.2d 728, 730 (11th Cir. 1981) ("Though knowing prosecutorial use of false evidence or perjured testimony violates due process . . . it is not enough that the testimony . . . is inconsistent with prior statements."); United States v. Brown, 634 F.2d 819, 827 (5th Cir. 1981) ("[D]ue process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements.")).

Defendant alleges in Ground Five that Government witness Cheryl Woodberry committed perjury, although he does not suggest, as he did with Ms. Britton, that the alleged perjury was sanctioned by the Government. Defendant claims that Ms. Woodberry's testimony that disclosure of liabilities and debts is important was contradicted by Wells Fargo's own documents indicating that Ms. Britton's income/asset to debt ratio was listed as "0%," thus showing that the bank approved an application which had no income listed at all. The existence and extent of any such contradiction were matters ripe for cross-examination at trial. Moreover, any such contradiction has no bearing on whether Defendant made a false statement on a loan application concerning such matters as liabilities, intent to occupy the property, and the relationship of the parties involved. Additionally, as noted above, an AUSA cannot be imputed with knowledge of "perjury" merely

because the testimony of one Government witness conflicts with the testimony or statements of another. Michael, 17 F.3d at 1385. Finally, even if the instant claim were meritorious—a finding the undersigned does not make—it is procedurally barred due to Defendant's failure to pursue it on direct appeal.[7] Lynn, 365 F.3d at 1234–35. Accordingly, Defendant is not entitled to relief.

Additional Grounds Raised in Reply Brief

Defendant raises two additional claims in his reply brief that he couches in terms of jurisdiction. First, Defendant asserts that the Government did not have jurisdiction to prosecute this case because his actions did not and could not have influenced the bank at closing and thus were not unlawful (ECF No. 144 at 9–11). This argument ultimately goes to the weight and sufficiency of the evidence, not the jurisdiction of the court to hear the case, and no relief is warranted.

Second, Defendant argues that the Government is part of a "scheme" to profit from the Alt-A no-documentation loans, and as such it perpetuates fraud by allowing the loans to proceed but then prosecuting individuals who default. He concludes that such fraud divests the Government of jurisdiction to prosecute (ECF No. 144 at 11–12). Defendant's understanding of jurisdiction is again misguided. Jurisdiction is the court's authority to hear a case, a matter totally independent of the Government's decision whether to prosecute a particular case. Defendant is not entitled to relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Defendant has not shown that counsel's performance was constitutionally deficient under the rigorous Strickland standard, and his motion should be denied in its entirety.

---

[7] As previously noted, appellate counsel reported to Defendant after his review of the record that he saw only sentencing issues worthy of appeal (ECF No. 144 at 47). What is more, counsel advised Defendant of the consequences of procedural bar at the time Defendant dismissed his appeal (*see* ECF No. 144 at 48).

Case Nos.: 3:11cr56/LAC/EMT; 3:13cv137/LAC/EMT

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED** that:

Defendant's "Motion to Take Judicial Notice under Federal Rule 201 in Defendant's 28 U.S.C. § 2255 Proceeding" (ECF No. 141) is **DENIED**, although the undersigned has reviewed and considered the contents of this document.

And it is respectfully **RECOMMENDED** that:

1. The amended motion to vacate, set aside, or correct sentence (ECF No. 139) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24th day of November 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


Case Nos.: 3:11cr56/LAC/EMT; 3:13cv137/LAC/EMT

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.